IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

KEITH DAVIS, :
:
    Plaintiff : CIVIL NO. 3:CV-18-314
:
v. :
: (Judge Conaboy)
:
ANTHONY EBERLING, ET AL., :
:
    Defendants :

## MEMORANDUM
### Background

Keith Davis, an inmate presently confined at the State Correctional Institution, Huntingdon, Pennsylvania (SCI-Huntingdon) initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983. Accompanying the Complaint is a request for leave to proceed in forma pauperis. See Doc. 3. For the reasons that follow, Plaintiff's action will be dismissed without prejudice.

Named as Defendants are Chief Hearing Examiner Joseph Dupont of the Pennsylvania Department of Corrections (DOC) and the following SCI-Huntingdon officials: Lieutenants Anthony Eberling and House; Captain B. Harris; Superintendent Kevin Kauffman; Hearing Examiner Scott Ellenberger; as well as Deputy Superintendents J. Thomas and L. Oliver.

According to the Complaint, Plaintiff was issued a misconduct on April 2, 2017 by Lieutenant Eberling which falsely accused him

1

of passing a knife to another prisoner, Inmate Harris on March 31, 2017. The knife was then used by Harris to assault another prisoner. Lieutenant House allegedly participated in the underlying investigation with Eberling.

Following an April 10, 2017 disciplinary hearing before Hearing Examiner Ellenberger Plaintiff was found guilty of the following charges: #1 assault; # 36 possession of contraband; and #43 presence in an unauthorized area.[1] He was sanctioned to a one hundred and thirty-five (135) day term of disciplinary confinement See Doc. 1, p. 8. Plaintiff contends that he was denied due process during the hearing because Ellenberger purportedly denied Plaintiff's request to call three (3) inmate witnesses and review surveillance video camera footage of the incident. Davis concludes that if the Hearing Examiner had review the video footage it would have established his innocence.

Following administrative appeals, a prison Program Review Committee (PRC) and thereafter Superintendent Kauffman and Chief Hearing Examiner Dupont upheld the finding of guilt. Davis additionally contends that as a result of his disciplinary confinement he was unable to properly pursue a state court collateral challenge to his Pennsylvania state conviction

---

[1] An exhibit attached to the Complaint shows that the hearing Examiner did review the videotape. See Doc. 1, p. 19. Moreover, vecase there was videotape footage of the incident the Hearing Examiner denied Plaintiff's request to present three inmate witneeses to the incident.

2

As relief, Plaintiff seeks an award of compensatory and punitive damages for emotional and mental injuries as well as declaratory and injunctive relief including expungement of the underlying disciplinary charges.

## Discussion

When considering a complaint accompanied by a motion to proceed in forma pauperis, a district court may rule that process should not issue if the complaint is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989), Douris v. Middleton Township, 293 Fed. Appx. 130, 132 (3d Cir. 2008). Indisputably meritless legal theories are those "in which either it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit ... ." Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)).

The United States Court of Appeals for the Third Circuit has added that "the plain meaning of 'frivolous' authorizes the dismissal of in forma pauperis claims that . . . are of little or no weight, value, or importance, not worthy of serious consideration, or trivial." Deutsch v. United States, 67 F.3d 1080, 1083 (3d Cir. 1995). It also has been determined that "the frivolousness determination is a discretionary one," and trial

3

courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal. Denton v. Hernandez, 504 U.S. 25, 33 (1992).

**Emotional Injury**

The Complaint asserts that Plaintiff has suffered emotional distress for which he seeks to recover monetary damages. See Doc. 1, p. 15. There is no allegation that Davis has suffered any accompanying physical injury. For the reasons outlined below, Plaintiff is not entitled to recover compensatory damages for mental anguish or emotional injury.

42 U.S.C. § 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." In Allah v. Al-Hafeez, 226 F.3d 247,250 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit recognized that where a plaintiff fails to allege actual injury, Section 1997e(e) bars recovery of compensatory damages. However, the Third Circuit Court of Appeals added that an inmate alleging a violation of his constitutional rights may still pursue the action to recover nominal and/or punitive damages even in the absence of compensable harm.

Under the standards announced in Allah, Plaintiff's request for monetary relief to the extent that it seeks compensatory

4

damages for emotional and psychological injuries for violation of his constitutional rights is barred by Section 1997e(e).

**Personal Involvement**

The allegations against many of the Defendants are based upon their review of his administrative appeal. A plaintiff, in order to state a viable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

5

Rode, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, any attempt by Plaintiff to establish liability against a defendant solely based upon the substance or lack of response to his institutional administrative appeal does not by itself support a constitutional due process claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident review process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with administrative review procedure is not actionable).

Pursuant to the above discussion the claims against Superintendent Kauffman, Chief Hearing Examiner Dupont and PRC members Thomas, Oliver and Harris which are solely based upon their review of Davis' administrative appeal are subject to dismissal.

6

**Disciplinary Placement**

Plaintiff alleges that his due process rights were violated during an institutional misconduct hearing which resulted in the inmate being improperly sanctioned to a term of disciplinary confinement.

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." The Supreme Court has mandated a two-part analysis of a procedural due process claim: first, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" Ingraham v. Wright, 430 U.S. 651, 672 (1977). If there is no protected liberty or property interest, it is obviously unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred.

Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law. Meachum v. Fano, 427 U.S. 215, 223-26 (1976). In Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556.

7

Nonetheless, the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. Id. at 563-71.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court reiterated that the due process safeguards set forth in Wolff must be provided when the challenged disciplinary proceeding results in a loss of good time credits. However, Sandin focused the liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. Id. at 481. In Sandin the Supreme Court reasoned, inter alia, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. Id. at 485. The nature of an inmate's confinement in disciplinary segregation was found similar to that of inmates in administrative segregation and protective custody at his prison. Id. at 486.

Focusing on the nature of the punishment instead of on the words of any regulation, the Supreme Court held that the procedural protections in Wolff were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. The Court examined the nature of disciplinary segregation and found that "[b]ased on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a

8

major disruption in his environment." Id. In the final holding of the opinion, the Court stated that neither the state prison regulation in question, nor the Due Process Clause itself, afforded a protected liberty interest that would entitle state prisoners to the procedural protections set forth in Wolff." See id. at 487 (emphasis added).[2]

Courts within this circuit, applying Sandin in various actions, have found no merit in procedural due process claims presented regarding institutional misconduct proceedings which resulted in disciplinary custody placement. See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest).

In Diaz v. Canino, 2012 WL 5352483 *3 (3d Cir. Oct. 31, 2012), the Third Circuit Court of Appeals reiterated that the sanctions

---

2. The Sandin Court relied on three factors in making this determination: (1) confinement in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a comparison between inmates inside and outside segregation, the state's action in placing the inmate there did not work a major disruption in the inmate's environment; and (3) the state's action did not inevitably affect the duration of inmate's sentence.

9

resulting from prison disciplinary hearings do not affect a protected liberty interest unless the sanction imposes an atypical and significant hardship on the inmate. In <u>Diaz</u>, the Court of Appeals concluded that a 360 day term of disciplinary confinement did not implicate a protected liberty interest. Considering the rules of law set forth in <u>Sandin</u> and the subsequent line of decisions by the Third Circuit Court of Appeals, this Court finds that any Plaintiff's claims pertaining to the imposition of a 135 day term of disciplinary custody which was imposed as the result of being found guilty of three misconduct charges does not set forth a viable constitutional claim because Davis had no protected liberty interest.

Since there is no claim by Davis that he was sanctioned to a loss of good time credits or any other sanction which adversely affects the duration of his confinement, a viable due process claim has not been set forth.

## Heck

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whole unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

10

authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87.

Based on the nature of Davis' allegations, a finding in his favor would imply the invalidity and/or comprise the disciplinary proceedings at issue herein. Pursuant to the standards developed in Heck, any request by Plaintiff for monetary damages with respect to the legality of his institutional misconduct charge is premature because Davis cannot maintain such a cause of action until his underlying disciplinary proceeding is rendered invalid. Thus, if Plaintiff is able to successfully challenge his misconduct hearing under Heck, he may then reassert a claim for damages in a properly filed civil rights complaint.

### Access to the Courts

Plaintiff's remaining claim generally contends that his disciplinary confinement undermined his ability to pursue a state court collateral challenge to his conviction.

It is well-settled that prison inmates have a constitutional right to meaningful access to law libraries, legal materials or legal services. Bounds v. Smith, 430 U.S. 817, 821-25 (1977). Failure to provide inmates with legal research material or trained legal assistance can constitute a constitutional violation. Gluth v. Kangas, 951 F.2d 1504, 1507 (9th Cir. 1991). The United States Supreme Court in Bounds, recognized that prisons must normally make

11

notary services available to inmates. Bounds, 430 U.S. at 824. However, a subsequent decision by the Court of Appeals for the Third Circuit clarified that "it does not necessarily follow that failure to provide such services constitutes a denial of access to the courts" because documents submitted to the courts need not be notarized. Hudson v. Robinson, 678 F.2d 462, 466 n. 5 (3d Cir. 1982).

Thereafter, the United States Supreme Court in Lewis v. Casey, 518 U.S. 343, 351-54 (1996), held that an inmate plaintiff, in order to set forth a viable claim under Bounds, must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded. A plaintiff must also allege an actual injury to his litigation efforts.

Davis indicates that he may have been represented by counsel with respect to the state court proceeding at issue. See Doc. 1, p. 10, ¶ 23. He also does not claim that he was denied access to legal materials, rather, only that he was not afforded sufficient research time. Furthermore, Plaintiff also implies that his action was dismissed by the Pennsylvania Superior Court as time barred. Based upon those factors, Plaintiff has not satisfied his burden under Lewis of demonstrating that he suffered an actual injury because of his disciplinary confinement.

**Conclusion:**

Since Davis' civil rights claim is "based on an indisputably

12

meritless legal theory," it will be dismissed, without prejudice, as legally frivolous. <u>Wilson</u>, 878 F.2d at 774. An appropriate Order will enter.

                                       /s/ Richard P. Conaboy
                                       RICHARD P. CONABOY
                                       United States District Judge

DATED: APRIL 11, 2018